## THE J. S. NEIL.

(Circuit Court, E. D. Missouri. April 28, 1881.)

1. COLLISION—RULE IN ADMIRALTY.

   Where there is a collision between two vessels, and one of them is sunk and its cargo lost, and the fault is all on one side, the party owning the vessel in fault must bear all the loss. If both are in fault, the loss and costs of suit are equally divided between the owners of the two vessels.

2. HOW VESSELS SHOULD STEER IN PASSING EACH OTHER.

   Where a steam-boat, in ascending a stream, has to pass a descending boat, it should keep within the larboard half of the navigable channel, and the descending boat should keep within the other half.

Appeal from the District Court of the Eastern District of Missouri.

This is an action *in rem*. The Chester Harris Manufacturing Company, or corporation, filed its libel in the district court against the J. S. Neil, a tug-boat owned by the Anchor Transportation Company, of Middleport, Ohio, and alleged that on the thirtieth day of April, 1880, it was the owner of a barge called the Collier No. 1, and a tug-boat called the Hickory; that the barge was being towed up the Mississippi on said day by the Hickory, and was, without any fault on the part of the libellant, or its employes or boats, run into and sunk by the J. S. Neil; and that the cargo of the barge was a total loss; and that the collision occurred through the negligence and unskilfulness of the crew of the J. S. Neil. The damages were laid in the sum of $3,400. The respondent and claimant, the Anchor Transportation Company, set up in its answer that the accident occurred through the negligence of the crew of the Hickory. There was an award in favor of libellant in the sum of $2,355 and costs of suit, from which the respondent and claimant took an appeal to the circuit court. The other facts are sufficiently set forth in the opinion.

*Broadhead, Slayback & Haensler*, for libellant.

*Given, Campbell*, and *R. H. Kern*, for libellee.

McCRARY, C. J. This is a case of collision, and the question is as to which party was in fault. It is a question mainly of fact, and I have neither the time nor the disposition to discuss at length the evidence. The steamer Hickory was, at the time of collision, proceeding up the Mississippi river, while the J. S. Neil was descending. They collided in the channel nearly opposite the foot of Goose island, about 30 miles above Cairo. It is conceded that, in due time, the pilot of the Hickory gave the usual signal to the Neil to keep to the larboard, which was answered by a signal denoting assent. It was, therefore, the

duty of the pilot of the Neil to keep as near as practicable to the island, that being to his larboard. This he did not do, for the collision occurred at least 100 yards, and probably much more than that, from the shore of the island. It is *pretty* evident, I think, from the testimony, that the pilot of the Neil, by backing his vessel upon a straight rudder, caused her bow to incline towards the center of the channel and thus to come into collision with the other vessel. But, whatever the reason may be, the fact is clear that the Neil was not as near to the island as she should have been, and was therefore in fault. Was the Hickory also in fault? As to the width of the navigable channel at the place of collision, and as to the distance from the shore of the island to the place of collision, there is much uncertainty in the evidence. It is clear that the main channel runs near the island, but it is also clear that there was at that time good navigable water for a distance of nearly half a mile. The Hickory was bound to give the Neil plenty of room to pass along near the shore of the island and to bear over towards the main shore for that purpose. I think it fair to say that if the Neil had fully one-half of the ordinary channel in which to pass down she was bound to keep within it. If she was seen further out in time for the pilot of the Hickory to have avoided this collision by bearing still further over towards the main shore, then it was his duty to have done so. But if the pilot of the Hickory so directed his vessel that he believed he was giving the Neil plenty of room, and if but for the sudden turning of the bow of the latter across the channel she would have had plenty of room, then I think the fault was wholly with the Neil, and this latter seems to have been the fact. By some failure to manage the Neil successfully, while backing her for the purpose of bringing her near the island, her bow was thrown suddenly outward, and being probably caught by the current she was placed in a position almost at right angles with the channel, and this at a moment too late for the Hickory to change her course and avoid the accident. The pilot of the Hickory had, with good reason, calculated that the bow of the Neil would be kept down stream, and it seems that, if this reasonable expectation had been realized, there would have been no collision.

In reaching this conclusion I give considerable weight to the finding of the board of arbitrators, composed of experts selected by the parties themselves, who, by agreement of parties, heard the testimony and rendered their award in the court below. Their finding

ought, at least, to be as persuasive as would have been a similar finding on the facts by the district court, or by a jury, if a jury had been allowed.

Decree of the district court affirmed.

### ON REHEARING.

McCRARY, C. J. Being in doubt upon the first hearing upon the question whether the collision and injury was the result of mutual fault, I granted the petition for rehearing so far as that question was concerned, and, having reconsidered it, I am now prepared to state my conclusions. That the Neil was in fault I have no doubt. If the Hickory was also in fault, it was because she did not bear as far to her larboard as was required under the circumstances. I adhere to the rule expressed on the first hearing, that if the Neil had one-half the channel left to her occupation that was enough. But in applying this rule in this case we must consider the condition of the channel as to width and depth at the time of the collision. It is clear that the navigable channel was at that time much wider and deeper than at an ordinary stage of water. The evidence shows that the width of the river from the island to the Missouri shore was half a mile. While it appears that the ordinary channel was only about 400 yards wide, and ran near the shore of the island, it also appears that at the time of the collision the water was high, and the whole half mile— certainly the greater part of it—was good navigation. The question how much room the Neil was entitled to depends somewhat upon the width of the navigable channel *at that time.* As this was not much, if any, less than half a mile, it seems that the Hickory should have been more than 150 yards from the island shore when the accident occurred. If the Neil was entitled to one-half of the width of the channel as it existed on that day, that would have given her at least 400 yards. Some consideration must also be given to the fact that the Neil was proceeding down stream with a heavy and unwieldy tow, and was, in consequence, somewhat difficult of management, as well as to the further fact that the Hickory had ample time in which to have borne over towards the Missouri shore still further, so as to incur no risk of collision.

It must be observed, too, that, even upon the theory that the Neil was entitled to one-half of the ordinary channel, (400 yards,) it is doubtful whether the Hickory was in her proper place. The weight of evidence locates the collision at a point 150 yards from the island

shore. Assuming that the channel is ordinarily 400 yards wide, and runs close to the island, this would give the Hickory 250 yards and the Neil only 150 yards. My conclusion is that the Neil was in fault for reasons heretofore stated, and that the Hickory was in fault for not bearing further to her larboard and leaving a wider space between her and the island.

There will, therefore, be a decree dividing the damages and costs. So ordered.